**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| RICHARD C. COE, BARBARA ANNE COE, DOUGLAS COE, JR., and PEAK ENERGY CORPORATION | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. _____ |
| v. | § § | |
| CHESAPEAKE EXPLORATION, LLC | § § | **JURY** |
| Defendant. | § § | |

**COMPLAINT AND JURY DEMAND**

Plaintiffs Richard C. Coe, Barbara Anne Coe, Douglas Coe, Jr., and Peak Energy Corporation ("Peak") file this action complaining of defendant Chesapeake Exploration, LLC ("Chesapeake"), and for causes of action would show as follows:

**NATURE OF ACTION**

1.     This action results from Chesapeake's breach of a contract to purchase over $29 million of east Texas oil and gas prospects from Peak.  When the price of natural gas began to fall and U.S. credit markets tightened, Chesapeake opted to breach its contract with these Plaintiffs rather than complete an economically unfavorable transaction.

**INTRODUCTION**

2.     Plaintiff Peak, a family-owned business headquartered in Plano, Texas, has held mineral leasehold interests in east Texas for more than 20 years.  Over the last two years, eastern Texas (including Harrison County) and western Louisiana have seen increased mineral leasing activity in the Haynesville Shale – a formation believed to hold significant gas reserves.  Indeed, the Haynesville Shale, through the first half of 2008, was one of the most active areas in the nation for natural gas leasing and exploration.  Plaintiffs Douglas Coe, Jr., Barbara Anne Coe, and Richard C. Coe (collectively the "Coe Plaintiffs") are principals and officers in Peak.

## PARTIES

3.      Plaintiff Richard C. Coe is a resident of Plano, Collin County, Texas.  Plaintiff Barbara Anne Coe is a resident of Dallas, Collin County, Texas.  Plaintiff Douglas Coe is a resident of Plano, Collin County, Texas.  Plaintiff Peak Energy Corporation is a Texas corporation with its principal place of business in Plano, Collin County, Texas.

4.      Defendant Chesapeake Exploration, LLC is a Oklahoma limited liability corporation, a subsidiary of Chesapeake Energy Corporation, and has its principal place of business in Oklahoma City, Oklahoma.  Chesapeake is qualified to do business in the State of Texas and may be served with process in this action by serving its registered agent for the service of process, CT Corporation, 350 North St. Paul Street, Dallas, Texas 75201.

## JURISDICTION AND VENUE

5.      Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this action because this action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Chesapeake because it regularly transacts business within the State of Texas and the Eastern District of Texas.  Chesapeake is registered to conduct business in the State of Texas.  Further, the Court has specific jurisdiction over Chesapeake as this entity contracted with Texas residents to acquire real property located in the State of Texas and the Eastern District of Texas.

7.      Venue is proper in this District under 28 U.S.C. §1391(a)(2) because the property that is the subject of this dispute is located in the Eastern District of Texas.

## BACKGROUND FACTS

8.      On July 3, 2008, Mr. Doug Jacobson, Executive Vice President of Acquisitions & Divestitures for Chesapeake, and Mr. Richard Coe, Vice President of Operations for Peak, executed a written agreement detailing the material terms of a transaction wherein Chesapeake

would acquire all of the right, title, and interest in and to oil and gas leases located in Harrison County, Texas owned by Peak and by entities affiliated with Peak for which Peak or its officers have authority to act as agent or principal.  Peak and entities affiliated with Peak for which Peak or its officers have authority to act as agent or principal shall be referred to herein as "Sellers." The parties excepted and reserved to the Sellers the rights in the formations from the surface of the Earth to the stratigraphic equivalent of the base of the Cotton Valley formation.  The parties also excepted and reserved an overriding royalty interest to the Sellers equal to the positive difference of all lease burdens subtracted from twenty-five percent.  Chesapeake agreed to pay Sellers $15,000.00 per net acre for these properties in Harrison County, Texas.  This agreement among the parties shall be referred to as the "Agreement" hereafter.  The Agreement adequately identified the properties that were subject to the transaction because Chesapeake agreed to acquire all of Seller's interest in leases in Harrison County.   In addition thereto, the parties identified the properties that were part of the Agreement by a map that was attached to the written Agreement and referenced in the written Agreement.  This map contains information such as the names and numbers of the surveys in which the property interests were located.  Peak had assigned its rights to the Harrison County oil and gas leases that were conveyed in the Agreement to the Coe Plaintiffs in 2007.  That assignment was recorded in the real property records of Harrison County in September 2008 in preparation for closing the transaction reflected in the Agreement.  Until the assignment into the Coe Plaintiffs was recorded in September 2008, the record owner of the properties conveyed in the Agreement was Peak, and a search of the Harrison County records would have identified those properties being conveyed in the Agreement.

9.     One of the formations below the stratigraphic equivalent of the base of the Cotton Valley formation is the Haynesville Shale formation.  Throughout the first half of 2008,

Chesapeake was on a land grab to acquire as many Haynesville Shale properties as possible and to win the land rush to give itself a competitive advantage in its marketplace.  By placing Sellers' Harrison County properties under contract, Chesapeake kept the properties away from its competitors and foreclosed the Sellers' ability to sell the properties to anyone else.

10.     Throughout August and September 2008, representatives of Sellers and Chesapeake conducted due diligence to prepare for closing on the Agreement.   During this process, Sellers expended significant funds to prepare the transaction and the properties for closing.

11.     By September 2008, the price of natural gas was approximately 50% lower than at the end of June 2008 – a fact Chesapeake cited in a September 22, 2008 press release as a contributing factor in its decision to reduce its drilling budget by 17%.  Additionally, Chesapeake noted concerns about "an emerging natural gas surplus."   In short, Chesapeake's aggressive pursuit of Haynesville Shale acreage in east Texas came to an abrupt halt.

12.     On or around October 15, 2008, Chesapeake's Mr. Michael Falen informed Mr. Richard Coe that Chesapeake would not go forward with the transaction detailed in the Agreement due to "timing issues" and because the Sellers' properties were now on the outside edge of where Chesapeake believed the best Haynesville Shale acreage was located.  Mr. Coe confirmed his conversation with Mr. Falen in an email to Chesapeake's Mr. Doug Jacobson.  On October 16, 2008, Mr. Jacobson replied that "timing is a tough thing in today's environment" and suggested the companies might do business in the future.  Chesapeake did not identify any title or contractual issues regarding Sellers' Harrison County properties that were unacceptable to Chesapeake or that would affect closing the transaction.

13.     Because of the falling price of natural gas and tightening credit markets, the agreement between Chesapeake and Sellers was no longer economically advantageous for

Chesapeake in October 2008.  As Mr. Aubrey McClendon wrote in an email to Chesapeake employees on October 10, 2008, "[w]hat was a fair price 90 days ago for a lease is now overpriced by a factor of at least 2x given the dramatic worsening of the natural gas and financial markets."   So, rather than suffering the ill-effect of the changing market by fulfilling its contractual obligations to Sellers, Chesapeake chose to repudiate the Agreement.  By the time that Chesapeake informed Sellers of its intent to repudiate the Agreement, the value of Sellers' property was drastically lower than in July 2008.

## CAUSES OF ACTION

**A.      Breach of Contract and Specific Performance**

14.      All preceding paragraphs of this Complaint are incorporated herein by reference as if specifically set forth herein.

15.      Chesapeake and Sellers entered into a binding, written contract requiring Chesapeake to purchase and Sellers to sell their Harrison County properties.  The Agreement sets forth the essential terms of the transaction.

16.      Sellers tendered performance under the Agreement.  Chesapeake repudiated the Agreement.

17.      Sellers were ready, willing, and able to fulfill all of their obligations under the Agreement, and all conditions precedent to Sellers' right to have the performance of Chesapeake under the Agreement have occurred or been performed or tendered.

18.      Sellers have been damaged by Chesapeake's breach of contract.  During the time that Sellers held their leases off the market as required by the Agreement, the value of the leases dramatically declined.  There is no adequate remedy at law for the damages incurred by Sellers as a result of Chesapeake's breach of contract.  Therefore, Sellers seek specific performance of Chesapeake's obligations under the Agreement.  Sellers are ready, willing, and able to perform

the remainder of their obligations under the Agreement should the Court order specific performance.

19.     In the alternative, Peak seeks to recover from Chesapeake the total amount of monetary damages it has incurred as a result of Chesapeake's breach of the Agreement.  Sellers have been damaged by the loss in value of the Harrison County properties that Chesapeake promised to buy.

20.     Additionally, Sellers have suffered consequential damages including the loss of use of the money Sellers have been denied, and continue to be denied, because of Chesapeake's breach of and repudiation of the parties' agreement.  Further, Sellers have suffered out of pocket damages that include the costs incurred in preparing for closing on the Agreement.  Sellers will also incur mitigation damages including marketing fees and broker fees if they have to take these properties back to market.  Sellers give notice of their claim to recover all damages that Sellers have suffered whether such damages are special, general, consequential, or incidental.

**B.      Reformation**

21.     All preceding paragraphs of this Complaint are incorporated herein by reference as if specifically set forth herein.

22.     In the alternative, though Sellers believe that the Agreement is legally binding, if the Agreement is not legally binding, Sellers plead for the equitable remedy of reformation and asks the Court to reform the Agreement so that the Agreement correctly reflects the intentions of the parties.

23.     The Agreement itself provides that it was a "valid and binding agreement."  If the Agreement is not legally binding, it is only as a result of a mutual mistake between Sellers and Chesapeake.  Both parties intended for the Agreement to be legally binding.

24.     Following reformation of the Agreement, if such is necessary, Sellers have suffered damages for which there is no adequate remedy at law and, thus, seek specific performance of the Agreement.  In the alternative, following reformation of the Agreement, if such is necessary, Sellers seek to recover the damages set forth in paragraphs 18, 19 and 20, which are incorporated herein by reference.

**C.     Promissory Estoppel**

25.     All preceding paragraphs of this Complaint are incorporated herein by reference as if specifically set forth herein.

26.     In the Agreement, Chesapeake made a promise to Sellers as described previously herein.  Sellers reasonably, justifiably, and substantially relied on Chesapeake's promise and suffered detrimental injury thereby.  Sellers' reliance was foreseeable by Chesapeake and, indeed, Chespeake knew that Seller was taking action in reliance on Chesapeake's promise.  Injustice can only be avoided by enforcing Chesapeake's promise.

27.     Sellers suffered reliance damage by incurring costs in preparation for closing on the Agreement and preparing its Harrison County properties for closing.  Sellers also suffered reliance damage by holding its Harrison County properties off the market while the market was steadily declining.

**D.     Recovery of Attorneys' Fees and Pre- and Post-Judgment Interest**

28.     Pursuant to Section 38.001, *et. seq.,* of the Texas Civil Practice and Remedies Code, Sellers seek recovery from Chesapeake of Sellers' reasonable attorneys' fees and costs incurred herein and through any appeal.  Sellers further pray for recovery of pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendant Chesapeake Exploration, LLC will be cited to appear and answer herein and that (i) Chesapeake will be ordered to specifically perform the Agreement or, in the alternative, Sellers will recover a judgment against Chesapeake for damages for Chesapeake's breach of contract; and (ii) Sellers will recover judgment against Chesapeake for all other damages allowed by contract or law, prejudgment interest, post-judgment interest, their reasonable attorneys' fees, expert witness fees, costs of copies of depositions, costs of court, and for all other relief to which Sellers may be entitled, special and general at law or in equity.

## JURY DEMAND

Plaintiffs demand a trial by jury as is their right under the Seventh Amendment to the Constitution of the United States or as given by statute.  FED. R. CIV. P. 38.

Dated: September 24, 2009

Respectfully submitted,

**/s/ Clint Schumacher**
Clint Schumacher (attorney in charge)
   State Bar No. 24002914
Elizabeth L. Tiblets
   State Bar No. 24066194
LOCKE LORD BISSELL & LIDDELL LLP
2200 Ross Avenue, Suite 2200
Dallas, Texas 75201-6776
Telephone: (214) 740-8000
Facsimile: (214) 740-8800
E-mail: jschumacher@lockelord.com

Scott Stevens
   State Bar No. 00792024
Stevens Love
P.O. Box 3427
Longview, Texas 75606
Tel:  (903) 753-6760
Fax:  (903) 753-6761
E-mail: scott@stevenslove.com

**ATTORNEYS FOR RICHARD C. COE,
BARBARA ANNE COE, DOUGLAS COE, JR.,
and PEAK ENERGY CORPORATION**